Jeffrey D. Kaliel (SBN 238293)
jkaliel@kalielgold.com
**KALIELGOLD PLLC**
1100 15th Street NW, 4th Floor
Washington, D.C. 20005
Tel: (202) 350-4783

Sophia Goren Gold (SBN 307971)
sgold@kalielgold.com
**KALIELGOLD PLLC**
950 Gilman Street, Suite 200
Berkeley, California 94710
Tel: (202) 350-4783

*Attorneys for Plaintiff and the Proposed Class*

**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| RONALD ORTEGA, on behalf of himself and all others similarly situated, | Case No. 2:21-cv-00845-KJM-CKD |
| | Hon. Kimberly J. Mueller |
| Plaintiff, | **AMENDED CLASS ACTION COMPLAINT** |
| v. | |
| CHICK-FIL-A, INC., and DOES 1- 50, inclusive, | **[DEMAND FOR JURY TRIAL]** |
| Defendant. | |

Plaintiff RONALD ORTEGA, on behalf of himself and all others similarly situated, complains and alleges upon information and belief based, among other things, upon the investigation made by Plaintiff and through his attorneys as follows:

**NATURE OF ACTION**

1. This is a proposed class action seeking monetary damages, restitution, and injunctive and declaratory relief from Defendant Chick-fil-A, Inc. ("Defendant" or "Chick-fil-A"), arising from its deceptive and untruthful promises to provide a flat, low-price delivery fee on food deliveries ordered through is app and website.

2. Since the beginning of the COVID-19 pandemic, Chick-fil-A has moved aggressively into the food delivery business, exploiting an opportunity presented by Americans' reduced willingness to leave their homes. To appeal to consumers in a crowded food delivery marketplace, Chick-fil-A has promised its customers low-price delivery in its mobile application and on its website, usually in the amount of $3.99.

3. These representations, however, are false, because that is not the true cost of having food delivered by Chick-fil-A. In fact, Chick-fil-A imposes hidden delivery charges on its customers in addition to the low "Delivery Fee" represented in its app and on its website.

4. On delivery orders only, Chick-fil-A secretly marks up food prices for delivery orders by a hefty 25-30%. In other words, the identical order of a 30-count chicken nuggets costs approximately $5-6 more when ordered for delivery than when ordered via the same mobile app for pickup, or when ordered in-store.

5. This hidden delivery upcharge makes Chick-fil-A's promise of low-cost, $3.99 delivery patently false. The true delivery costs are obscured, as described above, and far exceed its express representation that its "Delivery Fee" is only $3.99.

6. By falsely marketing a quantified, low-cost delivery charge, Chick-fil-A deceives consumers into making online food purchases they otherwise would not make.

7. Chick-fil-A misrepresents the nature of the delivery charges assessed on the Chick-fil-A mobile application and the website, by issuing in-app and online marketing materials that fail to correct reasonable understandings of its low-cost delivery promises, and that misrepresent the actual costs of the

delivery service.

8. Specifically, Chick-fil-A omits and conceals material facts about the Chick-fil-A delivery service, never once informing consumers in any disclosure, at any time, that the use of the delivery service causes a substantial increase in food prices.

9. Hundreds of thousands of Chick-fil-A customers like Plaintiff have been assessed hidden delivery charges they did not bargain for.

10. Consumers like Plaintiff reasonably understand Chick-fil-A's express "Delivery Fee" representation to disclose the total additional cost they will pay as a result of having their food delivered, as opposed to ordering online and picking up food in person, or ordering and picking up food in person.

11. By unfairly obscuring its true delivery costs, Chick-fil-A deceives consumers and gains an unfair upper hand on competitors that fairly disclose their true delivery charges. For example, other restaurants such as Del Taco and El Pollo Loco both offer delivery services through their app and website. But unlike Chick-fil-A, Del Taco and El Pollo Loco fairly and prominently represent their true delivery charges.

12. Plaintiff seeks damages and, among other remedies, injunctive relief that fairly allows consumers to decide whether they will pay Chick-fil-A's delivery mark-ups.

**PARTIES**

13. Plaintiff Ronald Ortega is a citizen of the State of California who resides in Sacramento, California.

14. Defendant, Chick-fil-A Inc. is incorporated in Georgia and maintains its principal business offices in Atlanta, Georgia.

**JURISDICTION AND VENUE**

15. This Court has original jurisdiction of this action under the Class Action Fairness Act of 2005. Pursuant to 28 U.S.C. §§ 1332(d)(2) and (6), this Court has original jurisdiction because (1) the proposed class is comprised of at least 100 members; (2) Plaintiff is a citizen of California, making at least one member of the proposed class a citizen of a different state than Defendant; and (3) the aggregate claims of the putative class members exceed $5 million, exclusive of interest and costs.

16. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Chick-fil-A is

subject to personal jurisdiction here and regularly conducts business in this district.  Also, a substantial portion of the events or omissions giving rise to the claims asserted herein occurred in this district.

## COMMON FACTUAL ALLEGATIONS

**A.     Food Delivery Services Increase in Popularity, and then Explode in Popularity During the Pandemic.**

17.    In 2018, the online food delivery industry was an astounding $82 billion in gross revenue and projected to exceed $200 billion by 2025.[1]

18.    US Foods reports that the average American consumer has two food delivery apps installed on their mobile phone and uses those apps three times per month.[2]

19.    The online food delivery industry predominately influences the country's most financially vulnerable populations. A nationwide research study conducted by Zion & Zion reveals that the largest user markets for online delivery food services are the young and the poor.[3] During a 90-day timeframe, 63% of consumers between the ages of 18 and 29 used a multi-restaurant delivery website or app service, followed by 51% of consumers between the ages of 30 to 44.[4] The study also demonstrated that the "less income a consumer earns, the more likely the consumer is to take advantage of restaurant delivery services," as those earning less than $10,000 per year ordered online delivery the most (51.6%).[5]

20.    Put plainly, the allure for online food delivery services has historically been based upon pure convenience. A 2019 Gallup study of third-party delivery services companies like GrubHub, DoorDash, and Uber Eats reported 72% of customers order online food delivery because they don't want to leave their house; 50% so that they can continue with their ongoing activities; and 41% to avoid bad

---

[1] *See* Frost & Sullivan, *$9.6 Billion in Investments Spurring Aggressive Expansion of Food Delivery Companies,* October 25, 2019, accessible at https://ww2.frost.com/news/press-releases/9-6-billion-in-investments-spurring-aggressive-expansion-of-food-delivery-companies/, last accessed January 19, 2021.

[2] *See* US Foods, *New Study Shows What Consumers Crave in a Food Delivery Service,* 2019, accessible at https://www.usfoods.com/our-services/business-trends/2019-food-delivery-statistics.html, last accessed January 19, 2021.

[3] *See* Aric Zion and Thomas Hollman, Zion & Zion Research Study, *Usage and Demographics of Food Delivery Apps,* accessible at https://www.zionandzion.com/research/food-delivery-apps-usage-and-demographics-winners-losers-and-laggards/, last accessed January 19, 2021.

[4] *Id.*

[5] *Id.*

weather.[6]

21. According to data compiled by Yelp, food delivery orders have *doubled* since the COVID-19 outbreak began.[7]

22. The arrival of the unprecedented COVID-19 pandemic escalated the value of online food delivery services from one of pure convenience to that of a comforting necessity for many consumers who are sick, in a high-risk population group for COVID-19, or simply do not feel safe to leave their homes and venture out into the public to purchase food during quarantine.

23. In its 2019 Economic Report conducted by research firm Technomic, DoorDash reported that 86% of customers agreed that DoorDash played an important role in helping them access food during the pandemic and 77% of consumers increased their use of third-party delivery services during this time.[8] Indeed, amidst the uncertainty of the novel virus, 68% of consumers now view ordering food online for delivery as the safer option.[9]

24. The era of COVID-19 undoubtedly caused a significant revenue boom for third party delivery services. SEC filings indicate that the top four U.S. food-delivery apps (DoorDash, Uber Eats, GrubHub, and Postmates) collectively experienced a *$3 billion increase* in revenue in just two quarters, April through September, following the enactment of shelter-in-place restrictions throughout the nation.[10]

25. The ramp up in utilization of food delivery services also had a massive positive impact on

---

[6] *See* Sean Kashanchi, Gallup, *Third-Party Delivery Will Grow; Is Your Restaurant Ready?,* May 6, 2019, accessible at https://www.gallup.com/workplace/248069/third-party-delivery-grow-restaurant-ready.aspx, last accessed January 19, 2021.

[7] *See* Tal Axelrod, The Hill, *Yelp: Delivery and take-out twice as popular as usual amid coronavirus,* March 20, 2020, available at https://thehill.com/policy/technology/488749-yelp-delivery-and-take-out-twice-as-popular-as-usual-amid-coronavirus, last accessed January 19, 2021.

[8] *See* Technomic and DoorDash, 2019 Economic Impact Report, *The Impact of DoorDash on Economic Activity and Restaurant Resilience,* available at https://doordashimpact.com/media/2019-Economic-Impact-Report.pdf, last accessed January 19, 2021.

[9] *Id.*

[10] *See* Levi Sumagaysay, Market Watch, *The pandemic has more than doubled food-delivery apps' business. Now what?,* last updated November 27, 2020, available at https://www.marketwatch.com/story/the-pandemic-has-more-than-doubled-americans-use-of-food-delivery-apps-but-that-doesnt-mean-the-companies-are-making-money-11606340169, last accessed January 19, 2021.

restaurant owners who were quickly on the brink of facing permanent closures during lockdown: 67% of restaurant operators said DoorDash was crucial to their business during COVID-19 and 65% say they were actually able to *increase* profits during this time because of DoorDash.

26. In the wake of the food delivery surge, Consumer Reports highlighted the need for fee transparency for consumers who use these apps and services.[11] A research team investigated food delivery companies and the report measured their compliance with new rules regarding fees enacted in seven US cities aimed at protecting consumers and businesses during the pandemic. It found that these companies continued to not comply with the new ordinances and continued to "employ design practices that obfuscate fees." They concluded that "[c]onsumers deserve to have informed choices to understand what they are being charged for *and* how their dollars spent impacts the restaurants they support and patronize in their communities."

**B.    Chick-fil-A's App and Website Fails to Bind Users to Any Terms of Service.**

27. When a consumer downloads the Chick-fil-A app, or uses the Chick-fil-A website, he may create an account in order to place an order for delivery or pickup.

28. In order to do so, a user enters in a name and contact information.

29. While the account creation screen contains a small hyperlink to view Chick-fil-A's Terms of Service and Privacy Notice, users are not required to affirmatively consent to such terms, such as by clicking or checking a box.

**C.    Chick-fil-A Prominently and Plainly Represents a Flat $3.99 "Delivery Fee" on its App and Website.**

30. Beginning in early 2020, Chick-fil-A began prominently featuring low-cost delivery promises on its mobile application and on its website.

31. Such representations often are made on the home screen of the app or website, and were always made on the check-out screen of the app and website, prior to the finalization of an order. On that screen, Chick-fil-A promised a flat "Delivery Fee," usually in the amount of $3.99.

---

[11] *See* Consumer Reports, *Collecting Receipts: Food Delivery Apps & Fee Transparency,* September 29, 2020, accessible at https://digital-lab-wp.consumerreports.org/wp-content/uploads/2020/09/Food-delivery_-Report.pdf, last accessed January 19, 2021.

32. Specifically, for supposed "$3.99 Delivery Fee" orders, the order finalization screen states:

>   Subtotal: [representing the cost of the food selected]
>
>   Tax: [representing sales tax]
>
>   Delivery Fee: $3.99
>
>   Tip:
>
>   Total: [adding up the above]

33. In short, there was no way for Plaintiff or other users of the Chick-fil-A mobile application or website to *avoid* seeing Chick-fil-A's promises of a flat fee, $3.99 delivery charge.

**D.  Chick-fil-A Omits and Conceals Material Facts About the Costs of the Chick-fil-A Delivery Service.**

34. But those disclosures were false and misleading, and the delivery charge was not, in fact, $3.99.

35. Chick-fil-A furtively marked up the cost of food reflected in the "Subtotal"—adding a hefty 25-30% to the cost of the food items ordered for delivery. Chick-fil-A did not and does not make similar markups for identical food items ordered via the same app or website, where such items are ordered for pickup instead of delivery.

36. Chick-fil-A omitted this material fact from its app and website disclosures, never informing users of this secret markup.

37. This secret markup—which Chick-fil-A *only* applies to delivery orders—is a hidden delivery fee. This alone renders false Chick-fil-A's promise of a flat, low-cost delivery fee of $3.99, which is made repeatedly in the app and the website, and then again in the "Delivery Fee" line item on the order screen.

38. In short, the "Delivery Fee" is not actually $3.99. The actual "Delivery Fee"—the extra charge for having food delivered as opposed to picking it up—is the listed "Delivery Fee" *plus* the hidden food markup applied exclusively to delivery orders.

39. Chick-fil-A does not inform consumers the true costs of its delivery service and it

misrepresents its "Delivery Fee" as $3.99, when in fact that cost is actually much higher.

**E.     Other Restaurant Industry Actors Disclose Delivery Fees Fairly and Expressly.**

40.     By unfairly obscuring its true delivery costs, Chick-fil-A deceives consumers and gains an unfair upper hand on competitors that fairly disclose their true delivery charges. For example, other restaurants like Del Taco and El Pollo Loco both offer delivery services through their app and website. But unlike Chick-fil-A, Del Taco and El Pollo Loco fairly and prominently represent their true delivery charges.

41.     For example, Del Taco does not mark-up food charges for delivery orders through its app. Instead, for delivery orders its ordering screen presents the following:

    Subtotal:

    Tax:

    Delivery Charge:

    Tip:

42.     All line-item amounts are **<u>identical</u>** for delivery and pick-up orders, except for the plainly and fairly disclosed delivery charge—allowing consumers to understand the true cost of the delivery service.

43.     Similarly, El Pollo Loco does not mark-up food charges for delivery orders through its app. Instead, for delivery orders its ordering screen presents the following:

    Subtotal:

    Delivery Charge:

    Tax:

44.     All line-item amounts are **<u>identical</u>** for delivery and pick-up orders, except for the plainly and fairly disclosed delivery charge—allowing consumers to understand the true cost of the delivery service.

45.     Lastly, although Instacart, the grocery delivery service, does mark-up item charges for delivery orders made through its app, it provides an express warning to consumers that the item prices listed on its app are "higher than in-store prices." Instacart's clear disclaimer is made visible to consumers before they place their orders and allows consumers to understand that they are paying a

higher price for utilizing the delivery service, as opposed to what they would pay had they purchased the same items in-store.

**F.     Plaintiff's Experience**

46.     Plaintiff used the Chick-fil-A app to make a purchase of food on January 29, 2021, in the total amount of $28.51.

47.     When using the app, and prior to placing his order, the Chick-fil-A app stated that the Delivery Fee was $3.99.

48.     However, the cost of the food ordered by Plaintiff bore a hidden delivery fee markup. To illustrate, Chick-fil-A charged Plaintiff $20.39 for a 30-count of Chick-fil-A nuggets.

49.     Upon information and belief, the same item would have cost Plaintiff 25-30% less than what he paid had he picked it up from the Chick-fil-A location instead.

50.     Plaintiff would not have made the purchase if he had known the Chick-fil-A delivery fee was not in fact $3.99.

51.     If he had known the true delivery fee, he would have chosen another method for receiving food from Chick-fil-A or ordered food from another provider.

## CLASS ALLEGATIONS

52.     Pursuant to California Code of Civil Procedure § 382, Plaintiff brings this action on behalf of himself and a Class of similarly situated persons defined as follows:

> All persons who, within the applicable statute of limitations preceding the filing of this action to the date of class certification, ordered food delivery through the Chick-fil-A mobile app or website, and were assessed higher delivery charges than represented.

53.     Excluded from the Class are Defendant, any entities in which they have a controlling interest, any of their parents, subsidiaries, affiliates, officers, directors, employees and members of such persons' immediate families, and the presiding judge(s) in this case, and their staff. Plaintiff reserves the right to expand, limit, modify, or amend this class definition, including the addition of one or more subclasses, in connection with his motion for class certification, or at any other time, based upon, *inter alia,* changing circumstances and/or new facts obtained during discovery.

54.     **Numerosity**:  At this time, Plaintiff does not know the exact size of the Class; however,

due to the nature of the trade and commerce involved, Plaintiff believes that the Class members are well into the thousands, and thus are so numerous that joinder of all members is impractical. The number and identities of Class members is administratively feasible and can be determined through appropriate discovery in the possession of the Defendant.

55. **Commonality**: There are questions of law or fact common to the Class, which include, but are not limited to the following:

    a. Whether during the class period, Defendant deceptively represented Delivery Fees on food deliveries ordered through the Chick-fil-A website and mobile app;

    b. Whether Defendant's alleged misconduct misled or had the tendency to mislead consumers;

    c. Whether Defendant engaged in unfair, unlawful, and/or fraudulent business practices under the laws asserted;

    d. Whether Defendant's alleged conduct constitutes violations of the laws asserted;

    e. Whether Plaintiff and members of the Class were harmed by Defendant's misrepresentations;

    f. Whether Plaintiff and the Class have been damaged, and if so, the proper measure of damages; and

    g. Whether an injunction is necessary to prevent Defendant from continuing to deceptively represent low-price, flat delivery fees on food deliveries ordered through the Chick-fil-A website and mobile app.

56. **Typicality**: Like Plaintiff, many other consumers ordered food for delivery from Chick-fil-A's website or mobile app, believing delivery to be the flat fee represented based on Defendant's representations. Plaintiff's claims are typical of the claims of the Class because Plaintiff and each Class member was injured by Defendant's false representations about the true nature of the delivery fee. Plaintiff and the Class have suffered the same or similar injury as a result of Defendant's false, deceptive and misleading representations. Plaintiff's claims and the claims of members of the Class emanate from the same legal theory, Plaintiff's claims are typical of the claims of the Class, and, therefore, class treatment is appropriate.

AMENDED CLASS ACTION COMPLAINT

57. **Adequacy of Representation**: Plaintiff is committed to pursuing this action and has retained counsel competent and experienced in prosecuting and resolving consumer class actions. Plaintiff will fairly and adequately represent the interests of the Class and does not have any interests adverse to those of the Class.

58. **The Proposed Class and Satisfies the Prerequisites for Injunctive Relief**. Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive and equitable relief with respect to the Class as a whole. Plaintiff remains interested in ordering food for delivery through Chick-fil-A's website and mobile app; there is no way for him to know when or if Defendant will cease deceptively misrepresenting the cost of delivery.

59. Specifically, Defendant should be ordered to cease from representing their delivery service as a low-price, flat delivery fee and to disclose the true nature of their delivery fee.

60. Defendant's ongoing and systematic practices make declaratory relief with respect to the Class appropriate.

61. **The Proposed Class Satisfies the Prerequisites for Damages**. The common questions of law and fact enumerated above predominate over questions affecting only individual members of the Class, and a class action is the superior method for fair and efficient adjudication of the controversy. The likelihood that individual members of the Class will prosecute separate actions is remote due to the extensive time and considerable expense necessary to conduct such litigation, especially when compared to the relatively modest amount of monetary, injunctive, and equitable relief at issue for each individual Class member.

## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
**Violation of California's Unfair Competition Law ("UCL")**
**Cal. Bus. & Prof. Code § 17200,** *et seq.*

62. Plaintiff re-alleges and incorporates the preceding allegations by reference as if fully set forth herein.

63. California Business & Professions Code § 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice." Chick-fil-A's conduct related to

deceptively representing that it provides a flat "Delivery Fee" of $3.99 on food deliveries ordered through its website and mobile app violates each of the statute's "unfair," "unlawful," and "fraudulent" prongs.

64. The UCL imposes strict liability. Plaintiff need not prove that Chick-fil-A intentionally or negligently engaged in unlawful, unfair, or fraudulent business practices—but only that such practices occurred.

65. A business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers, and that unfairness is determined by weighing the reasons, justifications, and motives of the practice against the gravity of the harm to the alleged victims.

66. A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the public.

67. A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

68. Chick-fil-A committed unfair and fraudulent business acts and practices in violation of Cal. Bus. & Prof. Code § 17200, *et seq.,* by affirmatively and knowingly misrepresenting on its website and mobile app that it provides a flat $3.99 "Delivery Fee" for food orders, when, in reality, it hides delivery charges through hidden food markups by 25-30% applied exclusively to delivery orders.

69. Defendant's acts and practices offend an established public policy of fee transparency in the marketplace, and constitute immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.

70. The harm to Plaintiff and the Class outweighs the utility of Defendant's practices. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the misleading and deceptive conduct described herein.

71. Defendant's conduct also constitutes an "unlawful" act under the UCL because, as detailed in Plaintiff's Second Claim for Relief below, it also constitutes a violation of sections 1770(a)(5) and (a)(9) of the California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq., infra,* in that Chick-fil-A deceptively represents that it provides a flat, low-price "Delivery Fee" for food

orders made on its website or mobile app; in reality, however, this marketing message is false because Chick-fil-A's use of the delivery service causes a substantial increase in food prices.

72. Chick-fil-A's business practices have misled Plaintiff and the proposed Class and will continue to mislead them in the future.

73. Plaintiff relied on Defendant's misrepresentations about the falsely advertised cost of delivery in choosing to utilize the Chick-fil-A food delivery service in ordering food from Defendant's website or mobile app.

74. By falsely marketing the true costs of food delivery, Chick-fil-A deceived Plaintiff and Class members into making online food purchases they otherwise would not make.

75. Had Plaintiff known the truth of the delivery service fee, *i.e.,* that Chick-fil-A's hidden food markups were in all reality "delivery fees," he would have chosen another method for receiving food from Chick-fil-A or ordered food from another provider.

76. As a direct and proximate result of Chick-fil-A's unfair, fraudulent, and unlawful practices, Plaintiff and Class members suffered and will continue to suffer actual damages. Defendant's fraudulent conduct is ongoing and present a continuing threat to Class members that they will be deceived into ordering food for delivery under the false belief that delivery was $3.99.

77. As a result of its unfair, fraudulent, and unlawful conduct, Chick-fil-A has been unjustly enriched and should be required to disgorge its unjust profits and make restitution to Plaintiff and Class members pursuant to Cal. Bus. & Prof. Code § 17203 and 17204.

**SECOND CLAIM FOR RELIEF**
**Violation of California's Consumer Legal Remedies Act ("CLRA")**
**Cal. Civ. Code § 1750,** *et seq.*

78. Plaintiff re-alleges and incorporates the preceding allegations by reference as if fully set forth herein.

79. This cause of action is brought pursuant to the Consumers Legal Remedies Act (CLRA), California Civil Code § 1750, *et seq*. Plaintiff and each member of the proposed Class are "consumers" as defined by California Civil Code § 1761(d). Defendant's sale of food products to consumers for delivery ordered through its website and mobile app were "transactions" within the meaning of

California Civil Code § 1761(e). Defendant's online delivery service utilized by Plaintiff and the Class is a "service" within the meaning of California Civil Code § 1761(b). The food products purchased by Plaintiff and the Class are "goods" within the meaning of California Civil Code § 1761(a).

80. Defendant violated and continues to violate the CLRA by engaging in the following practices proscribed by California Civil Code § 1770(a) in transactions with Plaintiff and the Class which were intended to result in, and did result in, the sale of Chick-fil-A food orders for delivery:

    a. "Representing that goods or services have . . . characteristics . . . that they do not have" (a)(5); and

    b. "Advertising goods or services with intent not to sell them as advertised" (a)(9).

81. Specifically, Chick-fil-A advertises to customers that use of its delivery service is a flat, low-price charge, such as $3.99, but this is false because Defendant imposes hidden delivery charges to consumers by secretly marking up food items applied exclusively for delivery orders by 25-30%.

82. At no time does Chick-fil-A disclose the true nature of its delivery fee to consumers; instead, it repeatedly conceals and misrepresents this material information at several steps of the transaction process.

83. Pursuant to § 1782(a) of the CLRA, Plaintiff's counsel notified Defendant in writing by certified mail of the particular violations of §1770 of the CLRA and demanded that it rectify the problems associated with the actions detailed above and give notice to all affected consumers of Defendant's intent to act. If Defendant fails to respond to Plaintiff's letter or agree to rectify the problems associated with the actions detailed above and give notice to all affected consumers within 30 days of the date of written notice, as proscribed by §1782, Plaintiff will move to amend his Complaint to pursue claims for actual, punitive and statutory damages, as appropriate against Defendant.  As to this cause of action, at this time, Plaintiff seeks only injunctive relief.

**THIRD CLAIM FOR RELIEF**
**Violation of California's False Advertising Law ("FAL")**
**Cal. Bus. & Prof. Code §§ 17500,** *et seq***.**

84. Plaintiff re-alleges and incorporates the preceding allegations by reference as if fully set forth herein.

85.    California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, states that "[i]t is unlawful for any ... corporation ... with intent … to dispose of ... personal property ... to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated ... from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement...which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading...."

86.    Defendant's material misrepresentations and omissions alleged herein violate Bus. & Prof. Code § 17500.

87.    Defendant knew or should have known that its misrepresentations and omissions were false, deceptive, and misleading.

88.    Pursuant to Business & Professions Code §§ 17203 and 17500, Plaintiff and the members of the Class, on behalf of the general public, seeks an order of this Court enjoining Defendant from continuing to engage, use, or employ their practice of misrepresenting their delivery fees.

89.    Further, Plaintiff and the members of the Class seek an order requiring Defendant to disclose such misrepresentations, and additionally request an order awarding Plaintiff restitution of the money wrongfully acquired by Defendant by means of said misrepresentations.

90.    Additionally, Plaintiff and the Class members seek an order requiring Defendant to pay attorneys' fees pursuant to Cal. Civ. Code § 1021.5.

**FOURTH CLAIM FOR RELIEF**
**Breach of Contract**

91.    Plaintiff repeats and re-allege the above allegations as if fully set forth herein.

92.    Plaintiff and Chick-fil-A have contracted for food delivery services, as embodied in the representations made in the Chick-fil-A app and website.

93.    No contract provision authorizes Chick-fil-A be able to imposes hidden delivery charges on its customers in addition to the "delivery charge" represented in its app and on its website.

94.    Chick-fil-A breached the terms of its contract with consumers by charging an additional

1  10% more for "delivery" than the contracted-for "delivery charge."

2  95. Plaintiff and members of the Class have performed all, or substantially all, of the obligations imposed on them under the contract.

96. Plaintiff and members of the Class have sustained damages as a result of Defendant's breach of the contract and breach of the implied covenant of good faith and fair dealing.

**FIFTH CLAIM FOR RELIEF**
**UNJUST ENRICHMENT**
**(On Behalf of Plaintiff and the Classes)**

97. Plaintiff repeats, realleges, and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

98. This Count is brought solely in the alternative. Plaintiff acknowledges that the breach of contract claim cannot be tried along with unjust enrichment.

99. To the detriment of Plaintiff and the Classes, Defendant has been, and continues to be, unjustly enriched as a result of its wrongful conduct alleged herein.

100. Defendant unfairly, deceptively, unjustly, and/or unlawfully seized and accepted said benefits which, under the circumstances, would be unjust to allow Defendant to retain.

101. Plaintiff and the Classes, therefore, seek disgorgement of all wrongfully obtained fees received by Defendant as a result of its inequitable conduct as more fully stated herein.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff on behalf of himself and the Class seeks judgment in an amount to be determined at trial, as follows:

(a) For an order enjoining Defendant from continuing the unlawful practices set forth above;

(b) For declaratory and injunctive relief as set forth above;

(c) For an order requiring Defendant to disgorge and make restitution of all monies it acquired by means of the unlawful practices set forth above;

(d) For compensatory damages according to proof;

(e) For punitive damages according to proof;

(f) For reasonable attorneys' fees and costs of suit;

(g) For pre-judgment interest; and

(h) Awarding such other and further relief as this Court deems just, proper and equitable.

## JURY DEMAND

Plaintiff hereby demands a jury trial on all claims so triable.

Dated: September 7, 2021  **KALIELGOLD PLLC**

By */s/ Jeffrey D. Kaliel*
Jeffrey D. Kaliel
Sophia Goren Gold

*Attorneys for Plaintiff and the Proposed Class*

AMENDED CLASS ACTION COMPLAINT

**CERTIFICATE OF SERVICE**

I hereby certify that on this 7th day of September, 2021, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system and a copy has been served on all parties who are registered with the CM/ECF service.

　　　　　　　　　　　　　　　　　　　　　　　　*/s/ Jeffrey D. Kaliel*