UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Ronald Ortega, | No. 2:21-cv-00845-KJM-CKD |
| Plaintiff, | ORDER |
| v. | |
| Chick-fil-A, Inc., | |
| Defendant. | |

Plaintiff Ronald Ortega alleges defendant Chick-fil-A breached its agreement to charge a flat delivery fee for online orders. First Am. Compl. (FAC) ¶¶ 1, 3. Chick-fil-A moves to dismiss the claims for breach of contract and unjust enrichment, Mot. Dismiss, ECF No. 32, and moves to strike the allegations in support of a nationwide class, Mot. Strike, ECF No. 33. As explained below, the court **grants** the motion to dismiss with leave to amend and **denies** the motion to strike as moot.

I.   **BACKGROUND**

On Chick-fil-A's mobile app and website, customers can order food for delivery or pick-up. FAC ¶ 27. Mr. Ortega used the app, but before he was able to place his order, the checkout screen broke down the cost of his order as follows:

Subtotal: $20.39 [representing the cost of the food selected]

Tax: [unknown number representing sales tax]

      Delivery Fee: $3.99

      Tip: [unknown number]

      Total: $28.51 [adding up the itemized cost above]

*Id*. ¶¶ 32, 46, 48.

      Mr. Ortega claims the price of his meal would have been 25 to 30 percent cheaper,[1] or about five dollars less, if he had ordered in store or for pick-up.  *Id*. ¶ 49.  Accordingly, Mr. Ortega alleges Chick-fil-A's representation of "$3.99 delivery fee" was false and misleading because the actual "delivery fee"—the extra charge for having food delivered as opposed to picking it up—was the $3.99 delivery fee plus the markup for delivery orders.  *Id*. ¶¶ 35–39.

      Mr. Ortega commenced this putative class action in state court, alleging Chick-fil-A violated the California Unfair Competition Law (UCL), Consumer Legal Remedies Act (CLRA), and False Advertising Law (FAL).  *See generally* Compl., ECF No. 1-2.  Chick-fil-A removed the case, invoking this court's diversity jurisdiction.  *See generally* Not. Removal, ECF No. 1.  Mr. Ortega sought and the court granted leave to amend.  *See* Prev. Order, ECF No. 30.  His complaint now includes claims for breach of contract and unjust enrichment and pursues relief on behalf of a proposed nationwide class.  *See* FAC ¶¶ 52, 91–101.

      As noted above, Chick-fil-A now moves to dismiss Mr. Ortega's contract and unjust enrichment claims and moves to strike the nationwide class allegations.  *See* Mot. Dismiss; Mot. Strike.  Mr. Ortega opposes both motions, ECF Nos. 36, 37, and Chick-fil-A has replied, ECF Nos. 39, 40.  The court submitted both motions without oral argument.  ECF No. 38.

**II.  MOTION TO DISMISS**

    **A.  Legal Standard**

      A party may move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  The motion may be granted if the complaint lacks a "cognizable legal theory" or if its factual allegations do not support a cognizable legal theory. *Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1208 (9th Cir. 2019) (quoting *Balistreri v.*

---

[1] Mr. Ortega provides conflicting numbers on how much Chick-fil-A marked up the food price for delivery.  *Compare* FAC ¶¶ 4, 49 (25 to 30 percent) *with id*. ¶ 94 (10 percent).

*Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)). The court assumes all factual allegations are true and construes "them in the light most favorable to the nonmoving party." *Steinle v. City & Cnty. of San Francisco*, 919 F.3d 1154, 1160 (9th Cir. 2019) (quoting *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995)). If the complaint's allegations do not "plausibly give rise to an entitlement to relief," the motion must be granted. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

A complaint need contain only a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), not "detailed factual allegations," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). But this rule demands more than unadorned accusations; "sufficient factual matter" must make the claim at least plausible. *Iqbal*, 556 U.S. at 678. In the same vein, conclusory or formulaic recitations of elements do not alone suffice. *Id.* (citing *Twombly*, 550 U.S. at 555). This evaluation of plausibility is a context-specific task drawing on "judicial experience and common sense." *Id.* at 679.

### B.   Breach of Contract

Chick-fil-A first moves to dismiss Mr. Ortega's contract claim. *See* Mot. Dismiss at 2. The elements of that claim are: (1) a valid contract, (2) plaintiff's performance, (3) defendant's breach; and (4) damages. *Richman v. Hartley*, 224 Cal. App. 4th 1182, 1186 (2014) (citation omitted). Chick-fil-A argues Mr. Ortega's allegations fall short of the first and third elements. *See* Mem. P. & A. Mot. Dismiss at 3–7, ECF No. 32-1. The court need not decide whether Mr. Ortega's allegations show he had a contract with Chick-fil-A, because he does not sufficiently allege Chick-fil-A breached any contract terms.

According to the complaint, "Chick-fil-A breached the terms of its contract with consumers by charging an additional 10% more for 'delivery' than the contracted-for 'delivery charge.'" FAC ¶ 94. Mr. Ortega's factual allegations do not support that claim; rather, they refute it. He alleges earlier in his complaint that Chick-fil-A agreed to charge a "Subtotal" for "the cost of the food selected" and a "Delivery Fee" of $3.99. *Id.* ¶ 32. He does not allege Chick-fil-A charged him more than that subtotal or delivery fee. He alleges instead that Chick-fil-A charges a lower "Subtotal" for the same food in its stores. *See id.* ¶ 37. In other words, he

3

claims the contract misleadingly implied "the cost of food selected" was the same in the app and in the store. As the court persuasively explained in *Ehret v. Uber Technologies, Inc.*, this was "not a contractual promise, but rather an alleged misrepresentation which skewed the transaction and caused Plaintiffs to expend more money than they otherwise would have had the representation not been made." 68 F. Supp. 3d 1121, 1141 (N.D. Cal. 2014). Mr. Ortega may instead appropriately attempt to prove Chick-fil-A's description of its prices was misleading in pursuing his claims under the UCL, CLRA, and FAL.

In *Ross v. Panda Restaurant Group, Inc.*, the Los Angeles County Superior Court appears to have reached a contrary conclusion about the fees Panda Express charged on delivery orders. *See* No. 21STCV03662 (Los Angeles Cnty. Super. Ct., Nov. 3, 2021)).[2] According to the complaint in that case, Panda Express offered to deliver food for a $2.95 "Delivery Fee," but it marked up the price of every delivery order by an additional 10 percent "Service Fee," supposedly for maintaining its customers' "digital experience." *See id.* at 2. The Superior Court read the complaint as alleging that Panda Express had agreed to deliver food for $2.95 but had breached this agreement "by charging more than $2.95 for food delivery." *Id.* at 8.

At first glance, it appears Panda Express's pricing practices are distinguishable from Chick-fil-A's. Unlike Panda Express, Chick-fil-A does not charge a separate fee, and it makes no claims about the purposes of the alleged markup. It simply charges higher prices for delivered food. But that distinction is hardly compelling; Panda Express could have sidestepped its contract liability by scrubbing out its "Service Fee" and simply charging more for delivered food.

In any event, the Superior Court's decision is not binding. *See Hill v. Walmart Inc.*, 32 F.4th 811, 822 (9th Cir. 2022). The court finds its reasoning unpersuasive. Mr. Ortega does not allege Chick-fil-A went back on its agreement to sell him food for the specified subtotal and deliver it for the specified fee. He does not allege Chick-fil-A agreed to charge the same price for

---

[2] A copy of the Superior Court's order in *Ross* is available on the docket of this action at ECF No. 36-1. The court takes judicial notice of that order. *See Applied Underwriters, Inc. v. Lara*, 530 F. Supp. 3d 914, 923 (E.D. Cal. 2021) ("Courts routinely take judicial notice of documents on file in federal or state courts . . . ."), *aff'd on other grounds*, 37 F.4th 579 (9th Cir. 2022).

4

food sold online as in its restaurants. He alleges Chick-fil-A withheld information about the food prices in its stores and misrepresented the prices it was charging. In addition, the *Ross* case was decided on demurrer, a state-law procedural device that differs from the motion permitted by Federal Rule of Civil Procedure 12(b)(6). *Compare, e.g.*, *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 810 (2005) ("It is error for a court to sustain a demurrer when the plaintiff has stated a cause of action under any possible legal theory." (citations and alterations omitted)) *with, e.g.*, *Twombly*, 550 U.S. at 562–63 (overruling pleading standard expressed in *Conley v. Gibson*, i.e., "that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." (quoting 355 U.S. 41, 47 (1957)).

Mr. Ortega also alleges "[n]o contract provision authorizes Chick-fil-A . . . to impose[] hidden delivery charges on its customers in addition to the 'delivery charge' represented in its app and on its website." FAC ¶ 93. He similarly relies on several cases about specific contractual provisions limiting prices. *See* Opp'n Dismiss at 4–5. But he cites no contractual provision forbidding Chick-fil-A from charging higher prices for food ordered in an app or online. Again, this difference may have been misleading, but it was not a contractual failure.

For similar reasons, Mr. Ortega cannot rely on cases against defendants who allegedly deceived plaintiffs to pay more than the agreed-upon prices. *See Cox v. Spirit Airlines, Inc.*, 786 Fed. App'x 283, 285 (2d Cir. 2019) (alleging defendant charged extra for carry-on items although items were already within scope of defendant's contractual obligations). Mr. Ortega does not allege Chick-fil-A charged him more than the total agreed-upon price. Nor can Mr. Ortega rely on cases in which courts denied motions to dismiss UCL, fraud or consumer protection claims based on a line-item misrepresentations. *See* Opp'n Mot. Dismiss at 7–8 (citing *Ehret*, 68 F. Supp. 3d at 1121; *Johnson v. Wal-Mart Stores, Inc.*, 544 Fed. Appx. 696, 697 (9th Cir. 2013); and *Hinojos v. Kohl's Corp.*, 718 F.3d 1098 (9th Cir. 2013)). As one of the cases he cites makes clear, allegations that support a UCL, fraud or consumer protection claim do not necessarily support a contract claim. *See, e.g.*, *Ehret*, 68 F. Supp. 3d at 1141.

For the reasons above, the court dismisses Mr. Ortega's claim for breach of contract with leave to amend, if an amendment is possible within the confines of Federal Rule of Civil Procedure 11.

### C. Unjust Enrichment

Chick-fil-A next moves to dismiss Mr. Ortega's unjust enrichment claim. *See* Mot. Dismiss at 2. "In California, unjust enrichment is not a separate cause of action." *Holt v. Globalinx Pet, LLC*, 2013 WL 3947169, at *13 (C.D. Cal. July 30, 2013) (citation omitted). A plaintiff may plead a claim for unjust enrichment alleging a contract is void or rescinded as an alternative to a breach of contract claim asserting the existence of an enforceable agreement. *Id*. But "[t]here is no equitable reason for invoking restitution when the plaintiff gets the exchange he expected." *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1371 (2010) (citation and quotations omitted). There is also "no occasion for resort to unjust enrichment" if a plaintiff can obtain relief under California's consumer protection laws, including the UCL and CLRA, because restitution is available under those statutes. *Falk v. General Motors Corp.*, 496 F. Supp. 2d 1088, 1099–1100 (N.D. Cal. 2007). Thus, the court dismisses Mr. Ortega's unjust enrichment claim, but with leave to amend if possible.

### III. MOTION TO STRIKE

Chick-fil-A next moves to strike Mr. Ortega's nationwide class allegations under Rule 12(f). Mot. Strike at 2. The complaint appears to propose a nationwide class for all of Mr. Ortega's five claims, including his consumer protection claims. *See* FAC ¶ 52. In his response to the motion to strike, however, Mr. Ortega clarifies he is seeking to represent a nationwide class only for his breach of contract and unjust enrichment claims. Opp'n Mot. Strike at 3. The court thus limits Mr. Ortega's nationwide class allegation to these enrichment claims. Because those claims are dismissed, the motion to strike his nationwide class allegations is moot.

### IV. CONCLUSION

The motion to dismiss (ECF No. 32) is **granted**. The motion to strike is (ECF No. 33) **denied as moot.**

Any amendments to the complaint must be filed within **twenty-one days** of this order.

In light of this order, the court **vacates** the Status (Pretrial Scheduling) Conference set for July 28, 2022 and **resets it** for October 6, 2022 at 2:30 p.m.  The parties shall file a joint status report fourteen days prior to the conference.

    IT IS SO ORDERED.

DATED:  July 22, 2022.

_____
CHIEF UNITED STATES DISTRICT JUDGE